UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JIMMY L. HOOD, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:13-cv-00270-SEB-MJD |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Jimmy Hood, Jr. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends **REVERSING** the decision of the Commissioner.

### I.    Procedural History

Hood filed applications for DIB and SSI on April 12, 2010, alleging an onset of disability of July 4, 2008. Hood's applications were denied initially and on reconsideration. Hood requested a hearing, which was held on July 24, 2012 before Administrative Law Judge Ronald Jordan ("ALJ"). The ALJ denied Hood's applications on August 10, 2012. The Appeals Council denied Hood's request for review on December 18, 2012, making the ALJ's decision the final decision for purposes of review. Hood filed his Complaint with this Court on February 15, 2013.

## II.     Factual Background and Medical History[1]

Jimmy Hood was 34 years old on the alleged disability onset date with past relevant work experience as an electrician's helper and general laborer. He has a methamphetamine ("meth") dependence and has been an addict since the age of 13. He has a history of self-harming behavior, which included cutting himself and suicide attempts. His earliest suicide attempt was at age 8. Hood has been in and out of jail for mostly drug-related offenses.

In April 2010, Hood was admitted at St. Vincent Health Center on an emergency detention for psychiatric treatment due to suicidal and homicidal ideation. At discharge, he was diagnosed with polysubstance dependence, conduct disorder, probable bipolar disorder, and personality disorder, not otherwise specified with strong antisocial traits. He was referred to Aspire for outpatient treatment regarding his drug addiction.

In June 2010, Hood sought treatment for his meth dependence at Aspire. At intake he appeared underweight and had visible sores and needle marks on his arms. His mental status exam indicated he was depressed and tearful, had poor judgment and insight, and his thought process was sometimes tangential. The record reflects that this began his period of sobriety. However, Hood was unable to begin outpatient treatment because he was incarcerated again.

In July 2010, William Shipley Ph.D. from the Disability Determination Bureau ("state agency") completed a Psychiatric Review Technique. Dr. Shipley reported that Hood's mental impairments met Listing 12.09 Substance Addiction Disorders. He also reported that Hood had marked limitations in activities of daily living and social functioning and moderate restrictions in concentration, persistence, or pace. Dr. Shipley also found that Hood had one to two episodes of decompensation and that drug addiction and alcoholism ("DAA") is material.

---

[1] The facts are limited to Hood's mental impairments as Hood does not challenge the ALJ's findings regarding his physical impairments.

The next treatment record is in May 2011, when Hood had a consultative examination with state agency physician Robert Brinkerhoff, Ph.D., HSPP. Dr. Brinkerhoff diagnosed Hood with Major Depressive Disorder, moderate, recurrent. His reason for the diagnosis was that Hood is depressed four out of seven days, has no interest, and sleeps more than normal. Dr. Brinkerhoff also indicated that Hood's Anti-Social Personality Disorder needed to be ruled out, as it was Dr. Brinkerhoff's opinion that Hood had significantly modified his anti-social disposition and no longer qualified for the diagnosis. Regarding Hood's capacity to work, Dr. Brinkerhoff found that socially, Hood appeared helpful to others, but he had considerable difficulty trusting and relating to others.

In May 2011, Joseph Pressner, Ph.D. from the state agency completed a Mental RFC Assessment for Hood. Dr. Pressner indicated that Hood was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, complete a workday without interruptions, interact with the general public, respond appropriately to changes in work setting, and set realistic goals or make plans independently of others. It was Dr. Pressner's opinion that Hood was capable of performing simple repetitive tasks in a low stress setting.

Dr. Pressner also completed a Psychiatric Review Technique in May 2011. Dr. Pressner evaluated Hood's mental impairments under Listing 12.04 Affective Disorders and opined that Hood's mental impairments do not meet or equal a listing. Dr. Pressner found that Hood was moderately restricted in the areas of daily activities; social functioning; and concentration, persistence, or pace and Hood had no episodes of decompensation. In September 2011, state agency physician Dr. Gange affirmed Dr. Pressner's assessments.

3

Hood began intensive outpatient treatment at Aspire in July 2011. He was referred to Aspire because he was kicked out of the drug court program for being verbally abusive to other members of the program. At intake, Hood was noted to have difficulty following directions and difficulty getting along with others. Hood attended group therapy several times a month and talked often in group. In August 2011, it was reported that he was not getting along with another group member who also lived with him.

In October 2011, Hood went off all medications due to depression. He did not attend any appointments at Aspire in November 2011 and missed many appointments in December. In December, it was reported that Hood felt suicidal and isolated himself. In January 2012, Hood relapsed on meth and was incarcerated again for violating his parole.

### III. Applicable Standard

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

If the ALJ determines that the claimant is disabled and there is medical evidence of drug addiction or alcoholism ("DAA"), the ALJ must determine whether DAA is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). Under the Social Security Act, "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 1382c(a)(3)(J). To determine whether DAA is a material factor, the ALJ must determine whether the claimant will still be disabled if he stopped the substance use. 20 C.F.R. § 416.935(b)(1). To make this determination, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped the substance use and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the ALJ determines that the claimant's remaining

limitations are disabling, then he is disabled independent of the substance use and the ALJ must find that DAA is not a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(ii). If the ALJ determines that the remaining limitations are not disabling, then the ALJ must find that DAA is a contributing factor material to the determination of disability, and, therefore, the claimant is not disabled. 20 C.F.R. § 416.935(b)(i).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Hood had not engaged in substantial gainful activity since July 4, 2008, the alleged onset date. At step two, the ALJ found that Hood had the following severe impairments: methamphetamine dependence, alcohol dependence, depression, and residuals of left knee surgery. At step three, first considering

6

Hood's impairments including the substance use disorder, the ALJ determined that Hood's impairments meet Listings 12.04 and 12.09 of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. Since this would render a finding of disability, the ALJ then considered whether the substance use was a contributing factor to this finding.

Going back to step two, the ALJ found that, if Hood stopped the substance use, he would continue to have a severe impairment or combination of impairments. At step three, the ALJ determined that, if Hood stopped the substance use, he would not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that, if Hood stopped the substance use, he would have the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the work must be limited to simple, repetitive tasks requiring no independent judgment regarding work processes.

At step four, the ALJ determined that, if Hood stopped the substance use, he would be unable to perform any past relevant work. At step five, the ALJ determined that, if Hood stopped the substance use, considering Hood's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Hood could perform. Therefore, the ALJ determined that DAA was a contributing factor and Hood was not disabled.

### V.  Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Hood was not disabled. *Dixon*, 270 F.3d at 1176. Hood raises two arguments on review: 1) substantial evidence fails to support the ALJ's determination that Hood's substance

use disorder was a contributing factor; and 2) the ALJ failed to properly evaluate the medical opinion evidence in the record.

### A.     Substantial evidence does not support the ALJ's determination that Hood's substance use disorder was a contributing factor.

Hood argues that his mental impairments continued to be disabling during his period of sobriety and therefore Hood's substance use was not a contributing factor to his disability. At the very least, Hood argues, the medical evidence was ambiguous requiring a finding that the substance use was not a contributing factor.

The initial burden is on the Plaintiff to show that alcoholism or drug addiction is not material to the finding of disability. *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); SSR 13-02p, 2013 WL 621536, *4 (February 20, 2013) (corrections listed in 2013 WL 1221979 (March 22, 2013)). The Social Security Rulings ("SSR") were recently amended to clarify the Commissioner's policy regarding substance use as a contributing factor. SSR13-02p. With regard to co-occurring mental disorders, there must be "evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA" to support a finding that DAA is material; the ALJ cannot "rely exclusively on medical expertise and the nature of a claimant's mental disorder." SSR 13-02p. "[The Commissioner] will find that DAA is not material [sic] to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA." *Id*. This cannot be a hunch or speculation. In other words, a tie goes to the

8

Plaintiff. *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003); *Salazar v. Barnhart*, 468 F.3d 615, 623 (10th Cir. 2006).[3]

The Court finds that there is not substantial evidence to support the ALJ's determination that Hood's substance use disorder was material to the finding of disability. The ALJ ignored much of the evidence pertaining to Hood's mental impairments. For instance, the ALJ noted Hood's meth addiction began when he was 13 years old [R. at 18], but failed to discuss Hood's behavioral issues since early childhood. The record reflects that Hood displayed self-harming behaviors including cutting and suicide attempts since age 8. [R. at 221, 227.] While there is no formal diagnosis in the record, the absence of the diagnosis does not mean that Hood's mental impairments were not disabling prior to the substance use. Hood reported that he began taking drugs and alcohol as a child because he could not afford prescription medication. [*Id*.] Given his history, this reason is plausible.

Further, during Hood's period of sobriety, Hood went off his medication in October 2011, missed therapy appointments in all of November and most of December, felt suicidal again, isolated himself and eventually relapsed in January 2012. [R. 380, 390, 392.] Although the state agency physicians reported that DAA is material, the ALJ cannot rely on medical expertise alone. The ALJ failed to reconcile Hood's potential childhood mental impairments as well as his most recent suicidal ideation and isolation. Given that the ALJ failed to discuss most of this evidence, the Court is compelled to find that the ALJ failed to build an accurate and logical

---

[3] Prior to the adoption of SSR 13-02p, there was a Circuit split regarding the binding effect of an Emergency Teletype issued by the Social Security Administration in 1996. The teletype directed a finding of disability unless evidence established that the claimant would not be disabled if a claimant stopped using drugs or alcohol. Social Security Teletype, No. EM-96200 (Aug. 30, 1996). The Seventh Circuit declined to rule on the binding effect of the teletype. *Harlin v. Astrue*, 424 Fed.Appx. 564, 568 (7th Cir. 2011). The language from the teletype has been adopted into SSR 13-02p and is "binding on all [sic] components" of the Social Security Administration. SSR 13-02p.

bridge from the evidence to the conclusion. Accordingly remand is appropriate for resolution of these discrepancies.

### B. The ALJ failed to properly evaluate the record resulting in an inappropriate RFC determination.

The ALJ determined that, if Hood stopped the substance use, he would have the residual functional capacity to perform light work that is limited to simple, repetitive tasks requiring no independent judgment. [R. at 20.] However, the record indicates that, during Hood's period of sobriety, he was limited in the area of social functioning and thus the ALJ should have limited Hood's interaction with people. For example, in evaluating Hood's mental impairments for medical equivalency, Dr. Pressner opined that Hood had moderate restrictions in activities of daily living; social functioning; and concentration, persistence or pace. [R. at 276.] However, the ALJ determined that Hood only had mild restrictions in activities of daily living and social functioning. [R. at 19-20.] Dr. Pressner also completed a mental RFC assessment in which he indicated that Hood is moderately limited in his ability to interact with the general public. [R. at 263.] Although the ALJ gave great weight to Dr. Pressner's opinion, the ALJ did not discuss Dr. Pressner's findings regarding these areas of restriction and did not provide any reason for rejecting Dr. Pressner's opinion in either the step three or RFC analyses. While Hood's mental impairments still would not have met or equaled a listing under Dr. Pressner's findings, the issues discussed above were potentially material to the determination of Hood's RFC.[4]

The ALJ primarily relied on Hood's consultative examination with Dr. Brinkerhoff in determining that Hood only had mild limitations in social functioning. However, the ALJ failed

---

[4] For a mental impairment to meet a listing, the plaintiff's impairment must meet the Paragraph B criteria, that is at least two marked restrictions in the areas of activities of daily living; social functioning; and concentration, persistence, or pace; or one marked restriction and at least one episode of decompensation each of extended duration. 20 C.F.R. Part 404, Subpart P, Appendix 1.

10

to address Dr. Brinkerhoff's finding that Hood had "considerable difficulty trusting and relating to others." [R. at 261.] Other notes state that Hood was kicked out of drug court due to altercations with other members, he did not get along with another member from group therapy that lived with him, and he had difficulty getting along with others. [R. at 342, 359, 364.] The ALJ failed to discuss any of the evidence which appears to contradict the ALJ's finding of mild restriction in social functioning. This resulted in potentially an incorrect RFC determination which is required at step five where the Commissioner has the burden to prove that Hood was not disabled. As such, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion and the ALJ failed to meet his burden at step five. On remand, the ALJ is instructed to resolve these inconsistencies and make a new RFC determination.

## VI. Conclusion

For the reasons set forth above, substantial evidence does not support the ALJ's determination that Hood is not disabled and the Magistrate Judge recommends that the Commissioner's decision be **REVERSED** and that Plaintiff's Motion for Summary Judgment [Dkt. 17] be **GRANTED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 12/20/2013 _____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

11

Karl E. Osterhout
OSTERHOUT DISABILITY LAW, LLC
karl@mydisabilityattorney.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov